## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MICHAEL ROSATI, individually and
derivatively on behalf of Rosati's
Franchise Systems, Inc. and WILLIAM
ROSATI, individually and derivatively
on behalf of Rosati's Franchise Systems,
Inc.,

               Plaintiffs,

    v.

ANTHONY ROSATI, DAVID ROSATI,
and POWER PLAY DISTRIBUTORS,
LLC,

               Defendants,

No. 20-cv-07762

Judge John F. Kness

## MEMORANDUM OPINION AND ORDER

This case centers on a dispute between family members who run a pizza business. Since the 1960s, the Rosati name has been closely and famously associated with hot, fresh pizzas—served to sit-down diners and take-out customers alike. To encourage and manage the growth of this burgeoning business, the extended Rosati family formed a ten-shareholder corporation in 1988, known as Rosati's Franchise Systems, Inc. ("RFSI"), that was designed both to run the existing family empire and sell franchises to operate new Rosati's pizza restaurants.

As sometimes occurs in closely held enterprises, disputes arose about how to run the business. To quell this internal strife, the shareholders concluded a series of

agreements in 1998 to change RFSI into, essentially, an intellectual property holding company. RFSI, as a business entity, stopped selling franchises and instead entered into license agreements with each shareholder. Under those license agreements, which are functionally identical, the family licensees were allowed to run their restaurants separately, in exclusive territories, and to sell additional franchises (provided those new restaurants did not invade another licensee's territory). This arrangement was intended to free each shareholder from having to coordinate day-to-day operations with other family members. To effect the scheme, each licensee was granted a "perpetual, non-exclusive and royalty-free" license "to use, and to sublicense the use of," the Rosati's trademarks and recipes "to operate Rosati's Pizza Restaurants. . . ."

Fast-forward to 2020, when two shareholders, Defendants Anthony and David Rosati, began selling frozen thin-crust pizzas bearing the Rosati's name at Illinois grocery stores. Anthony and David Rosati did not, however, seek RFSI's permission to launch this new venture using RFSI's property. Plaintiffs Michael and William Rosati, two other shareholders of RFSI, were unaware of the frozen pizza business until they discovered it during a visit to a local grocery store. This discovery led to a new period of family strife, culminating in the present lawsuit. Plaintiffs have sued Anthony and David Rosati, as well as the contracted distributor of the frozen pizzas, under the Lanham Act and various state law theories. Among other remedies, Plaintiffs seek a preliminary injunction enjoining Defendants from using the Rosati's name and marks in connection with frozen pizzas without authorization from RFSI.

Significantly, Plaintiffs purport to act not only on their own behalf but also in the name of RFSI.

For the reasons that follow, the Court finds that Plaintiffs are entitled to a preliminary injunction. Defendants' use of the RFSI-owned marks cannot be justified under the existing licensing scheme, which permits the use of the Rosati's name only in connection with the operation of *restaurants*. In the Court's view, a limited license to operate a restaurant does not also permit the unrestricted distribution of frozen Rosati's pizzas made in a factory. And although Plaintiffs did not, as is ordinarily required, ask the RFSI board to assert RFSI's own rights before Plaintiffs filed this suit, the record, at least at this preliminary stage, shows that any demand on the RFSI governing board would have been futile due to personal interests at play between various family members.

Because a preliminary injunction is necessary to alleviate the ongoing and irreparable harm to Plaintiffs and RFSI's intellectual property—harm greater than what Defendants will suffer—the Court grants Plaintiffs' motion for entry of a preliminary injunction and denies Defendants' motions to dismiss the complaint. A distinct injunction order will be entered later, following further proceedings to be set by separate order.

## I.   BACKGROUND

Rosati's Pizza is a locally known chain of pizza restaurants founded by Ronald and Richard Rosati in 1964. (Dkt. 29 at 1-2.) This family business, which started in Mt. Prospect, Illinois, quickly became one of the country's largest pizza franchises

and the largest regional pizza chain in the Chicago area. (*Id.* at 2.) As a brand, Rosati's Pizza is both famous and valuable.

It is aphoristic that success breeds success, and the Rosati's Pizza brand certainly leveraged its early success—not by magic or luck, but by good business practices. In 1998, the Rosati family formed Rosati's Franchise Systems, Inc. ("RFSI") as part of an initiative to expand the family business through the franchising of individual, made-to-order pizza restaurants. (*Id.* at 3.) An enduring and successful business, RFSI now has ten shareholders (most, if not all, are members of the extended Rosati family) who each hold a 10% stake in RFSI. (Dkt. 49 (Amended Complaint) at ¶¶ 29-30.)

Despite the existence of this sensible business framework, RFSI began to experience difficulties beginning in the mid-1990s. According to Plaintiffs, disputes arose among the Rosati family members concerning "their differing notions of how to run and build the business." (*Id.* ¶ 34.) These disputes eventually were resolved by negotiation; and in 1998, the familial antagonists jointly executed a document entitled "Agreement Concerning Exclusive Territorial Rights" (the "Territory Agreement"). (Dkt. 49-4.) Through this new agreement, the ten shareholders "decided to cease franchising Rosati's Pizza Restaurants through RFSI, to limit the role of RFSI to maintaining the Rosati's Marks, and to permit each of the shareholders to continue running their pizza restaurants independently of each other." (Dkt. 49 ¶ 34.) A central feature of the Territory Agreement was (and remains) an exclusivity provision that grants the restaurant franchisees "exclusive territorial rights" within

4

a circular region bearing a roughly five-mile radius ("by roads") surrounding any given restaurant.

Of present importance, the Territory Agreement memorialized the shareholders' consensus that RFSI assumed (and owns to this day) the right to the Rosati's Pizza name and the associated common law and registered trademarks. (*Id.*) In addition, the Territory Agreement contemplated, as a condition of the Agreement, that each of the ten original shareholders (and restaurant operators) was granted, among other rights and duties, a "perpetual, non-exclusive and royalty-free license to use, and to sublicense the use of, the Marks and Recipes [defined in the Agreement's "Whereas" clauses] to operate Rosati's Pizza Restaurants." (*Id.* ¶ 36; Dkt. 49-1 ¶ 1; Dkt. 49-4 at 1.) This agreement, which was executed in September 1998, is referred to by the parties as the "License Agreement." (Dkt. 49-1.)

These two 1998 agreements fostered a period of quiescence in the family discord. But the *Pax Rosati* dissolved in 2020 when Defendants Anthony and David Rosati, both shareholders in RFSI, began selling Rosati's frozen thin-crust pizzas in Illinois grocery stores in concert with Defendant Power Play Distributors, LLC. To the chagrin of Plaintiffs, sales of these frozen pies—the boxes bear the Rosati's logo and name (Dkt. 29 at 6; *see also* reproduced images at Section III.A.ii.a below) and use the Rosati's recipe (Dkt. 58 at 6)—include transactions at grocery stores within a five-mile radius of existing Rosati's restaurants owned by other shareholders. (Dkt. 29 at 1; Dkt. 29 at 5.) It is apparently undisputed that Anthony and David never

presented the idea of selling Rosati's-branded frozen pizzas to the RFSI board for consideration. (Dkt. 29 at 7-8; Dkt. 65 at 11 n.10; Dkt. 53 at ¶ 15.)

Purporting to act both on behalf of themselves and, derivatively, on behalf of RFSI itself, Plaintiffs brought this Lanham Act and state law-based action challenging Defendants' use of the Rosati's Pizza marks on frozen pizzas. Plaintiffs contend that the License Agreement does not allow Defendants the right to use the Rosati's mark in the frozen pizza business. According to Plaintiffs, the License Agreement grants Defendants the right merely to operate Rosati's restaurants, not to sell frozen Rosati's pizzas. (Dkt. 49 ¶ 4.) Plaintiffs assert that they are entitled to bring their derivative claims without having made a demand-to-sue on the RFSI board because, they contend, any such demand would have been futile. Plaintiffs now seek a preliminary injunction barring Defendants from conducting further sales of infringing frozen pizzas pending final resolution of this lawsuit. (Dkt. 29 at 2.)

Defendants oppose a preliminary injunction, for several reasons. Defendants first contend that, because Plaintiffs failed to make the requisite shareholder demand on the RFSI board, this lawsuit is not properly before the Court. (Dkt. 58 at 10-13.) Defendants also argue that, even if the demand requirement can permissibly be excused, the terms of the License Agreement are sufficiently broad to permit the sale of Rosati's frozen pizzas. (*Id*. at 13-15.)

These arguments are addressed in turn. As explained below, because Plaintiffs have shown a likelihood of success on the merits and have otherwise demonstrated

that the balance of harms works to their greater detriment, a preliminary injunction is warranted.

## II.   LEGAL STANDARD

Preliminary injunctive relief is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted); *see also Boucher v. Sch. Bd. of Sch. Dist. of Greenfield*, 134 F.3d 821, 823 (7th Cir. 1998) (same). Like any good pizza, a preliminary injunction has several complementary ingredients. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). First, the movant, who bears the burden of persuasion, must make a threshold showing "that it has some likelihood of success on the merits; that it has no adequate remedy at law; [and] that without relief it will suffer irreparable harm." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019) (quotation omitted).[1] If the movant fails to cross that threshold, the analysis must stop, and the request for preliminary injunctive relief must be denied. *See Adams v. City of Chicago*, 135 F.3d 1150, 1154 (7th Cir. 1998).

If a movant successfully crosses this tripartite threshold, the Court must then "weigh[ ] the irreparable harm that the moving party would endure without the

---

[1] Just last year, the Court of Appeals clarified what it means for a plaintiff to show "likelihood of success on the merits" in the context of a request for a preliminary injunction. *Mays v. Dart*, 974 F.3d 810, 822 (7th Cir. 2020) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 129 (2008)). In rejecting the previous "better than negligible" standard, the Seventh Circuit explained that a plaintiff need only show "some" likelihood of success on the merits to meet its burden. *Mays*, 974 F.3d at 822. What amounts to "some" likelihood depends on the facts of the case at hand. *Id.*

protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *Girl Scouts*, 549 F.3d at 1086. Under this balancing test, the more likely it is that the movant will succeed on the merits, the less the movant must show that the balance of harms weighs in its favor (and vice versa). *GEFT Outdoors*, 922 F.3d at 364. Finally, the Court "must also consider the public interest in granting or denying an injunction." *Stuller, Inc. v. Steak N Shake Enters., Inc.*, 695 F.3d 676, 678 (7th Cir. 2012). In trademark cases, the most pertinent consideration in assessing the public's interest is the (public) consumer's interest in not being deceived about products being offered for sale. *A.J. Canfield Co. v. Vess Beverage, Inc.*, 796 F.2d 903, 909 (7th Cir. 1986).

## III.   DISCUSSION

### A.   Likelihood of Success on the Merits

Of central importance is whether Plaintiffs are likely (at least to some degree) to succeed on the merits of their claim. Defendants contend, for two primary reasons, that Plaintiffs have failed to demonstrate the requisite likelihood of success. Defendants first contend that, because Plaintiffs did not bring a shareholder demand to the RFSI board before filing suit, this case is not properly before the Court. As a fallback, Defendants insist that, even if a shareholder demand was not required, the License Agreement gives Defendants Anthony and David Rosati the right to sell frozen pizzas under the Rosati's Pizza brand. Plaintiffs counter that, because a majority of the RFSI board lacks independence, demand would be futile. Plaintiffs

8

also argue that the language of the License Agreement cannot permissibly be stretched to permit the sale of frozen pizzas.

In the Court's view, Defendants' arguments[2] concerning the License Agreement are tenuous at best. As explained below, Plaintiffs have demonstrated a significant likelihood of success on their trademark claims—which turn largely on the meaning of RFSI's license agreement. More debatable is whether Plaintiffs will be able to show that their failure to lodge a demand-to-sue with the RFSI board should be excused. Accordingly, whether a preliminary injunction is warranted turns primarily on the issue of demand futility. But even though that issue is closer, the Court finds, at this early and preliminary stage,[3] that Plaintiffs have established a sufficient likelihood of success on the demand futility question to permit a preliminary injunction.

### i.    Demand Futility

It is undisputed that courts ordinarily cannot entertain a derivative suit by a stockholder on behalf of a corporation until the complaining stockholder has unsuccessfully pursued intra-corporate remedies. Fed. R. Civ. P. 23.1; *see also*

---

[2] Defendant Power Play joined in full Defendants Anthony and David Rosati's arguments in opposition to Plaintiffs' motion for a preliminary injunction. (Dkt. 57 at 5.) In this order, the Court also addresses Power Play's arguments.

[3] Also pending before the Court are the motions to dismiss of Defendants Anthony and David Rosati (Dkt. 61) and Defendant Power Play (Dkt. 63). Because those motions raise substantially identical arguments to those presented regarding likelihood of success on the merits in Defendants' responses to Plaintiffs' motion for preliminary injunction, those motions are denied for the same reasons the Court finds that Plaintiffs have demonstrated a likelihood of success on the merits. *See Nat'l Inst. of Fam. & Life Advocs. v. Rauner*, No. 16 C 50310, 2017 WL 11570803, at *3 (N.D. Ill. July 19, 2017) ("in light of this court's finding below that plaintiffs have made a substantial showing of a likelihood of success on the merits of their claim . . . defendants' motion to dismiss . . . is denied").

*McLaughlin on Class Actions* § 9:12 (17th ed. 2020). In recognition of the authority of the board to manage and to direct the management of the corporation, a shareholder lacks standing and authority to sue on behalf of the corporation unless (1) its pre-suit demand on the board to sue is adjudicated to have been wrongfully refused; or (2) where a demand was not made and the court determines that, because the directors were incapable of making an impartial decision regarding the proposed litigation, demand was excused. *Aronson v. Lewis,* 473 A.2d 805, 811 (Del. Super. Ct. 1984); *see also McLaughlin on Class Actions* § 9:12 (2020). This means that the stockholder must make a demand for remedial action on the corporation itself, by application to the board of directors or comparable authority. *Id.* A shareholder who makes a pre-suit demand on the board waives the ability to allege demand futility in future litigation. *In re Abbott Lab'ys Derivative S'holders' Litig.,* 325 F.3d 795, 804 (7th Cir. 2003).

This so-called futility exception to the demand requirement establishes limited circumstances in which a shareholder is permitted to circumvent the board's authority to commend litigation on behalf of the corporation. *Id.* at 804. RFSI is an Illinois corporation; Illinois law thus governs the demand futility question. *Id.* at 803. As the Seventh Circuit has explained, Illinois law follows Delaware law with respect to determining whether demand is futile: put directly, "Delaware law controls." *In re Abbott Depakote S'holder Derivative Litig.*, 909 F. Supp. 2d 984, 992 (N.D Ill. 2021) (citing *In re Abbott,* 325 F.3d at 804).

To determine whether demand is futile, Illinois courts have applied the standard set forth by the Delaware Supreme Court in *Aronson*: demand can only be excused "where facts are alleged with particularity which create a reasonable doubt that the directors' action was entitled to the protections of the business judgment rule." *In re Abbott,* 325 F.3d at 806-07 (citing *Spillyards v. Abboud*, 662 N.E.2d 1358, 1366 (Ill. App. Ct. 1996)); *see also Powell v. Gant*, 556 N.E.2d 1241,1245 (Ill. App. Ct. 1990); *Starrels v. First Nat'l Bank of Chicago*, 870 F.2d 1168, 1170-71 (7th Cir. 1989); *Silver v. Allard*, 16 F. Supp. 2d 966, 969 (N.D. Ill. 1998). Demand futility "is inextricably bound to issues of business judgment and the standards of that doctrine's applicability." *In re Abbott,* 325 F.3d at 807. In turn, the business judgment rule is "a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Id.* (citing *Aronson*, 473 A.2d at 812). A plaintiff who challenges a board's judgment bears the burden to establish facts in rebuttal of this presumption. *Id.*

*Aronson*'s two-pronged test explains that demand futility exists if, accepting the plaintiff's well-pleaded facts as true, there is a reasonable doubt that either (1) the directors are disinterested or independent; or (2) the challenged transaction was the product of a valid exercise of the directors' business judgment. *Id.* Reasonable doubt, in this instance, means that the shareholder had an objectively reasonable belief that the board lacks independence. *See McLaughlin on Class Actions* § 9:12 (2020).

11

Plaintiffs argue that, because a majority of the RFSI shareholders either are not independent or have an interest in the frozen pizza business, a pre-suit demand on the RFSI board would be futile. Independence of board members is examined as of the time the action was commenced. *Park Emps.' & Ret. Bd. Emps.' Annuity & Benefit Fund of Chicago v. Smith*, No. CV 11000-VCG, 2016 WL 3223395, at \*9 (Del. Ch. May 31, 2016)*, aff'd sub nom. Park Emps.' & Ret. Bd. Emps.' Annuity & Benefit Fund of Chicago on behalf of BioScrip, Inc. v. Smith*, 175 A.3d 621 (Del. 2017). Conclusory allegations about lack of director independence are not sufficient. *LVI Grp. Invs., LLC v. NCM Grp. Holdings, LLC*, No. 12067-VCG, 2017 WL 1174438, at \*8 (Del. Ch. Mar. 29, 2017). A complaint must instead allege with particularity, on a director-by-director basis, facts showing that a majority of the relevant directors are either materially interested in the outcome or lack independence from someone who has a disqualifying interest. *Id*. As one court noted, the key issue is "whether the possibility of gaining some benefit or the fear of losing a benefit is likely to be of such importance to that director that it is reasonable for the Court to question whether valid business judgment or selfish considerations animated the director's vote[.]" *Orman v. Cullman*, 794 A.2d 5, 25 n. 50 (Del. Ch. 2002). Allegations of "mere personal friendship or a mere outside business relationship, standing alone, are insufficient to raise a reasonable doubt about a director's independence." *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1050 (Del. 2004).

Plaintiffs allege that four[4] of the ten shareholders of RFSI (the "Four Shareholders") have a business relationship with Anthony and David Rosati that is of such personal importance to the Four Shareholders that they are effectively "beholden" to these Defendants. (Dkt. 65 at 10.) According to Plaintiffs, the evidence shows that the Four Shareholders rely upon Anthony and David Rosati to help run their existing Rosati's Pizza businesses—and this reliance is of such significance that the Four Shareholders fear any disobedience or independence will cause Anthony and David Rosati to cut off this essential business help. Defendants respond that the Four Shareholders are in fact able owners of their own Rosati's franchises and possess sufficient aptitude to make informed and knowledgeable decisions on behalf of RFSI. Defendants bolster this argument by noting that the Four Shareholders showed sufficient independence through a recent vote against Anthony and David Rosati on a significant matter of RFSI's corporate governance. These arguments are addressed in turn.

a.    *Administrative Services*

Plaintiffs suggest that reasonable doubt exists concerning the Four Shareholders' independence because the Four Shareholders are "beholden" to Anthony and David. Plaintiffs first explain that Anthony and David Rosati, along with the Four Shareholders, jointly own a Rosati's Pizza franchise holding company called "RFI." (Dkt 53 ¶ 12.) Plaintiffs allege these services include "general

---

[4] The four shareholders are Stephen Rosati, Geary Rosati, Joan Rosati, and Lisa Suma. Plaintiffs contend these four individuals (along with Anthony and David) "banded together" after the License Agreements were executed in 1998 to collectively manage restaurants owned by their franchisees through a company called RFI. (Dkt. 29 at 8.)

management, graphic design support, legal services, finance and accounting services, tax preparation, preparation of franchise disclosure documents for prospective licensees/franchisees, and quality assurance through periodic restaurant visits." (Dkt. 49 ¶ 45; Dkt. 52 at 11; Dkt. 59 ¶ 30).) Plaintiffs further allege that Anthony and David Rosati are in "complete control" of RFI and are the only ones with knowledge of the day-to-day business operations. (Dkt. 53 ¶ 12.). Plaintiffs contend that, were Anthony and David Rosati to withdraw from RFI (the franchise holding company), the Four Shareholders would suffer "serious operational problems" in their businesses. (*Id*. ¶ 18.)

Plaintiffs also allege that, on top of the close business relationships between Anthony and David and the Four Shareholders, all six shareholders "live close to each other" and have "close personal ties" that would make it even less likely they would decide to support a lawsuit against Anthony and David. (Dkt. 65 at 10 n. 9 (citing Dkt. 65-1).) This, according to Plaintiff, is enough to create reasonable doubt as to the independence of the Four Shareholders.

Plaintiffs' allegations are supported by Plaintiff William Rosati's sworn declaration. (Dkt. 53.) In his declaration, William Rosati states the Four Shareholders each admitted that they "disapprove of Anthony and David's frozen pizza business" but, in William Rosati's "understanding," the Four Shareholders are reluctant to interfere with Defendants' frozen pizza business out of fear that Anthony and David Rosati would withdraw from RFI in retaliation. (*Id*. ¶ 18.) Any such withdrawal would "create serious operational problems for [the Four Shareholders']

14

businesses and would endanger their ability to find and solicit additional franchisees." (*Id.*).

Defendants admit that RFI provides "certain administrative work" for the Four Shareholders' businesses. (Dkt. 59 ¶ 30.) But Defendants contend that the Four Shareholders have significant business acumen that leaves them "completely able to make their own decisions in running their businesses and in voting as RFSI shareholders." (*Id.*) Defendants point out that three of the Four Shareholders (Lisa, Geary, and Stephen) are experienced business owners who maintain their own franchising website and "pursue and close their own franchise leads independently[.]" (*Id.*)

With full awareness that the parties do (and almost certainly will continue to) dispute many factual issues, the Court finds at this early stage that Plaintiffs have alleged sufficient facts to show "some" likelihood of success in establishing demand futility. On the current record, it is reasonable to infer that the Four Shareholders would have difficulty ignoring their reliance on Anthony and David Rosati, at least to a degree sufficient that they could exercise genuine independence as RFSI board members. The Four Shareholders belong to the same franchise company as Anthony and David Rosati, rely on Anthony and David for administrative work, and may suffer "serious operational problems" if Anthony and David stopped providing the administrative services. (Dkt. 53 ¶¶ 12, 18; Dkt. 59 ¶ 30.) Moreover, and as William Rosati alleges, although the Four Shareholders "disapprove" of Defendants' frozen pizza business, they would hesitate to go against Anthony and David Rosati out of

fear of negative consequences to the business they jointly own with Anthony and David Rosati (RFI). (Dkt. 53 ¶ 18.) After all, any challenge by RFSI (which owns the Rosati's marks and recipes) to Anthony and David Rosati's asserted violation of the License Agreement could eventually result in the Four Shareholders having a role in suing the very people with whom they own and run a separate business. *See*, *e.g.*, *Orman*, 794 A.2d at 25 n. 50 (correct question in demand futility case is "whether the possibility of gaining some benefit or the fear of losing a benefit is likely to be of such importance to that director that it is reasonable for the Court to question whether valid business judgment or selfish considerations animated that director's vote on the challenged transaction"). These facts significantly support Plaintiffs' demand futility argument.

          *b.*    *Shareholder Vote*

In support of their contrary argument that the Four Shareholders are fully capable of making an independent and good faith decision on any shareholder demand, Defendants highlight a recent corporate governance vote in which the Four Shareholders voted differently than Anthony and David Rosati. In September 2020, Anthony and David Rosati supported a proposal by which RFSI would purchase the shares of one of the ten RFSI shareholders, Frederick ("Rick") Rosati, who had recently died intestate. (Dkt. 59 ¶ 29.) After an initial vote in favor of the proposal, six shareholders (including the Four Shareholders) voted against the proposal and signed a written consent to rescind the vote for RFSI to purchase Rick Rosati's shares. (*Id.*) Defendants argue that, because the vote was important to Anthony and David

Rosati, the decision of the Four Shareholders to vote against the proposal shows sufficient independence. (*Id.*)

Although this evidence cuts against Plaintiffs' position, it fails at this stage to overmatch the evidence of director partiality discussed above. Under Delaware law—which Illinois follows—the "nature of the decision at issue must be considered in determining whether a director is independent." *Marchand v. Barnhill*, 212 A.3d 805, 819 (Del. 2019). And in Delaware, the decision "whether to sue someone is materially different and more important than the decision whether to part company with that person on a vote about corporate governance[.]" *Id.* This precedent undermines the persuasive value of Defendants' contrary-vote evidence: although the vote on Rick Rosati's shares may have been important to Anthony and David Rosati, it was not of the same significance as deciding whether to sue them. Indeed, approving a lawsuit—even threatening one—is "the sort of thing that might plausibly endanger a relationship." *Sandys v. Pincus*, 152 A.3d 124, 134 (Del. 2016). In short, Defendants' example of independence is not enough to preclude a finding in Plaintiffs' favor.

*        *        *

Based on the current record, Plaintiffs have shown some likelihood they will succeed in establishing a reasonable doubt as to the Four Shareholders' ability to act independently concerning Anthony and David Rosati. This finding is supported by evidence that the Four Shareholders depend upon Anthony and David Rosati (and their business management services) and fear that participating in legal action (threatened or real) would lead to significant personal and business costs.

17

Accordingly, Plaintiffs have satisfied the likelihood of success element of the threshold test for a preliminary injunction.

### ii.     Trademark Claims

Shareholder demand issues are not the only hurdle Plaintiffs must clear to earn a preliminary injunction; they must also show they have some likelihood to succeed on the merits of their trademark claims. To succeed on a trademark infringement claim, a plaintiff must establish that it has a protectible trademark and that the defendant's use of the mark creates a "likelihood of confusion" as to the association or affiliation of the plaintiff's mark. *Eveready Battery Co. v. Adolph Coors Co.*, 765 F. Supp. 440, 449 (N.D. Ill. 1991). Courts should consider seven factors in determining whether there is a likelihood of confusion: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and (7) intent of the defendants to palm off their products as those of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008).

Possession of a valid license to use a trademark, however, makes it unnecessary to assess the likelihood of confusion. *Scala's Original Beef & Sausage Co.*, No. 09-cv-7353, 2009 WL 5183799, at *3 (N.D. Ill. Dec. 22, 2009). In this case, the effect of the License Agreement—whether it provides Defendants a license to sell Rosati's frozen pizzas—is hotly contested between the parties. Accordingly, the Court

18

will address both whether there is a likelihood of confusion caused by Defendants' frozen pizza sales and whether the License Agreement permits the challenged sales.

> a. *Likelihood of Confusion*

Neither side focuses significantly on whether the packaging of the frozen pizzas is likely to cause confusion regarding the Rosati's mark. As it is, the record comfortably establishes that confusion is likely under several factors of the *AutoZone* test. Turning first to the foundational question of similarity, the samples provided by Plaintiffs show that the marks are nearly identical:

**Figure 2: Infringing Pizza Box (Front)**     **Figure 3: RFSI's Logo Mark**

 

(Dkt. 49 at 15.) In the Court's view, there can be little doubt even a discerning consumer would presume that these frozen pizzas are affiliated with the established Rosati's mark owned by RFSI.

Regarding the second factor (similarity of the products), the evidence also suggests likelihood of confusion because frozen grocery-store pizzas are sufficiently similar to freshly made, store-bought pizzas. *Cf. Burger King Corp. v. Pilgrim's Pride Corp.*, 705 F. Supp. 1522, 1529 (S.D. Fla. 1988), *aff'd sub nom. Burger King v. Pilgrim's Pride*, 894 F.2d 412 (11th Cir. 1990) (evidence sufficient to show likelihood of confusion even though trademark owner sold hot and ready-to-eat food, and alleged

infringer sold frozen food). It is also evident, relevant to the third *AutoZone* factor, that both fresh and frozen Rosati's pizzas are being sold concurrently and in the same general geographic area.

Whether consumers are exercising a high degree of care, the fourth *AutoZone* factor, is neutral. *See Bernatello's Pizza, Inc. v. Hansen Foods, LLC*, 173 F. Supp. 3d 790, 799 (W.D. Wis. 2016) (finding degree of care factor neutral among consumers of grocery store premium frozen pizzas because, although purchasing a frozen pizza "would not prompt the kind of deliberation that one would bring to the purchase of an automobile," premium frozen pizza "is not at the bottom of the market like the 'belly-filler' pizzas that . . . are low-priced commodities purchased primarily because of price"). So too for the fifth factor, strength of the mark, as it is undisputed that the Rosati's mark is strong and well-established. (*See* Dkt. 49 ¶ 90; Dkt. 58 at 7.) There is also no evidence of actual confusion (the sixth factor), but such evidence is not essential at this preliminary stage. *See, e.g., CAE, Inc. v. Clean Air Eng'g. Inc.*, 267 F.3d 660, 685 (7th Cir. 2001) ("the absence of factual allegations demonstrating actual confusion is not dispositive of the likelihood of confusion").

As to the final factor—Defendants' intent—Plaintiffs have the upper hand. There is no doubt that Defendants intend to pass off their frozen pizzas as genuine Rosati's products; after all, Defendants contend that these sales are occurring under a valid license. (Dkt. 58 at 17-18.) It would be unreasonable to think that Defendants would both assert that they own a license to sell Rosati's frozen pizzas and yet dispute that they intend to sell those pizzas under the Rosati's name.

Taken together, these factors shown convincingly that Plaintiff is likely to succeed in showing a likelihood of confusion between RFSI-approved products and those offered by Defendants. This analysis could be irrelevant, however, if Defendants' frozen pizza sales are in fact authorized by RFSI. And that cues up the crux of this dispute: whether Plaintiffs are likely to succeed in showing that Defendants' use of the RFSI marks exceeds the bounds of the License Agreement that, all sides agree, remains valid and otherwise enforceable.

### b.     *License Agreement*

Two parts of the License Agreement are particularly relevant to this case: the "Grant of License" and the "Exclusive Territories" provisions. Under the Grant of License provision, a "Licensee" (a definition that includes Anthony and David Rosati) may use RFSI's "Marks and Recipes" in connection with operating "Rosati's Pizza Restaurants":

**<u>Grant of License</u>**

Company grants to Licensee and Licensee accepts from Company the perpetual, non-exclusive and royalty-free right and license to use, and to sublicense the use of, the Marks and Recipes to operate Rosati's Pizza Restaurants on the terms and conditions of this Agreement.

(Dkt. 49-1 ¶ 1.)

Under a relevant portion of the "Exclusive Territories" provision, the Agreement makes clear that Licensees (again including Anthony and David Rosati) are not "prohibit[ed]" from "delivering product offered by" one restaurant to customers located in territories exclusive to other restaurants:

**<u>Exclusive Territories</u>**

. . . [N]othing in this Agreement shall prohibit other operators of Rosati's Pizza Restaurants from delivering products offered by such restaurants to customers located in the exclusive territories of Licensee or its sublicensees and nothing in this Agreement shall prohibit Licensee or its sublicensees from delivering products offered by their Rosati's Pizza Restaurants to customers located in the exclusive territories of other operators of Rosati's Pizza Restaurants.

(*Id.* ¶ 2.)

At issue are the metes and bounds of these two provisions. Defendants contend that, properly construed, these clauses mean that the License Agreement permits the ongoing and unrestricted distribution of frozen pizzas bearing the Rosati's name. (Dkt. 58 at 13.) More specifically, Defendants explain that the License Agreement can be split into two categories of rights: (1) a broad grant of rights to licensees; and (2) separate provisions for restaurants. (*Id.*) Defendants suggest that, because RFSI is the "sole and exclusive owner of all right, title, and interest in and to the names 'Rosati's Pizza' and all trademarks and service marks associated therewith," and because RFSI "licensed those broad rights" to the shareholders who signed the License Agreements, all the broad rights owned by RFSI were part of the License Agreement to the licensees. (*Id.*) Defendants assert that the making, distributing, and selling of frozen pizzas bearing the Rosati's mark is but one permissible form of these broad rights.

Defendants contend that the Exclusive Territories provision further bolsters their position. According to Defendants, that provision is intended to clarify the rights of Licensees by providing merely the "territory within which another Rosati's

restaurant may not operate." (*Id.*) But that delimiting does not, according to Defendants, also serve to limit Defendants' ability to deliver "products offered by the restaurants"—including frozen pizzas—to customers located in any of the exclusive territories. (*Id.*) In Defendants' view, the frozen pizzas they sell are but one form of "products offered by [Rosati's Pizza] restaurants"; the pizzas just happen to be (1) made in a factory operated by Defendant Power Play; and (2) "delivered" to customers at grocery stores located in the exclusive territories of other Licensees. (*Id.* at 14.)

Plaintiffs take a different tack. They contend that the language of the License Agreement "clearly" shows that Defendants are not authorized to use the Rosati's marks for their frozen pizza business. (Dkt. 29 at 10.) Plaintiffs point to the language of the "Grant of License" provision, which allows a licensee to use the Rosati's marks "to operate Rosati's Pizza Restaurants." (*Id.* at 11.) According to Plaintiffs, this does not extend the use of the marks to frozen pizzas, because the sale of frozen pizzas has no connection to operation of the Rosati's Pizza Restaurants.

Plaintiffs also argue that the quality of the frozen pizzas is inferior to the homemade pizzas served at Rosati's restaurants and further violates a separate provision of the License Agreement. Specifically, Plaintiffs contend that section seven of the License Agreement requires a licensee to provide "a quality of services and products sold under the [Rosati] Marks that is commensurate with the quality of products and services offered by Rosati's pizza restaurants." (*Id.* at 4 (quoting Dkt. 49-1 ¶ 7).) Because the frozen pizzas are allegedly inferior to the pizzas baked at the

Rosati's restaurants, Plaintiffs contend, Defendants' use of the Rosati's logo on an inferior product also violates the License Agreement.

With full appreciation that this case is in its early stages, the Court holds that Plaintiffs have the stronger argument—and significantly so. To begin, it is axiomatic that a trademark license "is the limited grant of a right to use another's property interest and is limited to the grant in the license." *Bunn-O-Matic Corp. v. Bunn Coffee Serv., Inc.*, 88 F. Supp. 2d 914, 923 (C.D. Ill. 2000). Defendants' broad construction of the License Agreement must be examined with that rule in mind.

In construing the relevant provisions of the License Agreement, the most natural reading is simple and direct: the License Agreement grants a license to operate "Rosati's Pizza Restaurants" that prepare fresh pizzas using the Rosati's recipe and sell them under the Rosati's name. Each restaurant is granted a geographical area within which other Rosati's Pizza Restaurants may not be located. And restaurants are permitted to deliver pizzas to locations within another restaurants' exclusive territory. In the Court's view, the License Agreement is really no more complicated than that.

Defendants unreasonably attempt to distort this straightforward language to justify their sales of infringing frozen pizzas. Defendants contend that the frozen pizzas made and distributed by Power Play constitute "products offered by such restaurants"—meaning brick-and-mortar Rosati's Pizza Restaurants. But that construction stretches the meaning of "products offered by such *restaurants*" too far. A restaurant is an "eating establishment at which meals are cooked and served to

customers on the premises; a public eating house." *See Restaurant*, Oxford English Dictionary Online, available at https://www.oed.com/view/Entry/163915?redirected From=restaurant#eid (last visited Aug. 18, 2021). Most persons with an ordinary understanding of American English would likely find that the making of pizzas in a factory by a contracted supplier for distributing in a grocery store does not mean the same thing as "operat[ing]" a "Rosati's Pizza Restaurant[.]"

So too for Defendants' contention that grocery store sales of frozen pizzas amount to "delivering products offered by such restaurants." A more reasonable interpretation of this paragraph is that it allows a licensee to deliver pizzas baked in the Rosati's restaurant to a customer's home; that is a commonly-recognized business practice of pizza restaurants. Defendants' argument would require the Court to find that a paragraph tucked in a section about territorial exclusivity allows a licensee to use the Rosati trademark on any item that could possibly be made in a Rosati's restaurant. But the more sensible reading of the whole License Agreement is that the Grant of License provision, not the exclusivity provision, governs the entirety of how the licensed Rosati's marks can be used. And as explained above, delivering frozen pizzas made in a factory to grocery stores for resale does not equate to operating a Rosati's pizza restaurant.

To conclude, Plaintiffs have submitted enough evidence to suggest Defendants' use of the Rosati's trademark is outside the bounds of the License Agreement and therefore constitutes trademark infringement. Because the Court found that there is some likelihood that Plaintiffs will succeed on their demand futility argument, and

because the evidence presented also shows Plaintiffs are likely to succeed on their trademark infringement claims, the first factor for a preliminary injunction is met.

### B.     Irreparable Harm/Inadequate Remedy at Law

It has been long been the law in the Seventh Circuit that the lack of an adequate remedy at law and irreparable harm are generally presumed in trademark infringement actions. *Eli Lilly & Co. v. Natural Answers*, 233 F.3d 456, 469 (7th Cir. 2000); *see also Venus Lab'ys, Inc. v. Vlahakis*, No. 15 C 1617, 2015 WL 1058264, at *3 (N.D. Ill. Mar. 5, 2015) ("[I]rreparable harm and inadequate remedy at law are presumed in trademark infringement cases in the Northern District of Illinois"). Defendants argue this presumption was called into question by the Supreme Court's decision in *eBay v. MercExchange, LLC*, 547 U.S. 388 (2006). (*See* Dkt. 58 at 2-3 (citing *Park Ridge Sports, Inc. v. Park Ridge Travel Falcons*, 20 C 2244, 2020 WL 6262394, at *4 (N.D. Ill. Oct. 23, 2020)).) *Park Ridge Sports*—and other decisions from this District reaching the same conclusion (*see USA-Halal Chamber of Commerce, Inc. v. Best Choice Meats, Inc.*, 402 F. Supp. 3d 427, 437 (N.D. Ill. 2019) (collecting cases))—anticipated, as a result of *eBay*, that the Seventh Circuit was likely to overturn *Eli Lilly* and that there should be no presumption of irreparable harm. *Park Ridge Sports, Inc.*, 2020 WL 6262394, at *4.

Contrary to *Park Ridge Sports*, however, other courts in this District have concluded that the better course is to continue to apply *Eli Lilly*'s presumption of irreparable harm until the Seventh Circuit revisits the issue. *See, e.g., Data Mgmt. Ass'n Int'l v. Enter. Warehousing Sols., Inc.*, No. 20 C 04711, 2020 WL 7698368, at *4

n.2 (N.D. Ill. Dec. 28, 2020) ("[B]ecause the Seventh Circuit has not yet addressed, much less overturned, its binding precedents applying the presumption in trademark cases . . . this Court will continue to apply the presumption here"). In this Court's view, the safer course is that taken in *Data Mgmt*. To depart from binding Seventh Circuit precedent, this Court must be "powerfully convinced" that the Court of Appeals will overrule its previous decision "at the first available opportunity." *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1123 (7th Cir. 1987). Given that *eBay* was decided in 2006, this Court is not "powerfully convinced" that the Seventh Circuit will revisit its decision in *Eli Lilly*.

To the contrary, there is good reason to believe the presumption of irreparable harm in trademark actions enjoys even more force now than it did when *Eli Lilly* was decided. A recent amendment to the Lanham Act, cited jointly by the parties, appears to have codified the presumption: as reflected in § 226 of the Consolidated Appropriations Act of 2021, a plaintiff who seeks an injunction in a Lanham Act case "shall be entitled to a rebuttable presumption of irreparable harm upon a . . . finding of likelihood of success on the merits." Pub L. 116-260 § 226(a), 134 Stat. 2208 (2020) (*codified at* 15 U.S.C. § 1116(a)).

Understandably, the parties disagree about the effect of the amendment on this case. Plaintiff contends that it has established some likelihood of success on the merits to warrant a presumption of irreparable harm. (Dkt. 71 at 2.) Conversely, Defendants argue the irreparable harm presumption is not warranted because Plaintiffs cannot show the threshold requirement of a likelihood of success on the

merits. ((Dkt. 57 at 6-7; Dkt. 58 at 19-22.) But for the reasons provided above, the Court has already found that Plaintiffs have established some likelihood of success on the merits. Based on this finding, irreparable harm must be presumed at this stage under the Lanham Act as well as *Eli Lilly* and related appellate decisions.

### C.  Balance of Harms

Before it can enter any injunction, the Court must also consider the balance of harms between the parties. *Holbrook Mfg. LLC v. Rhyno Mfg. Inc.*, 497 F. Supp. 3d 319, 335 (N.D. Ill. 2020). In making this assessment, the Court must "weigh[ ] the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *See Girl Scouts*, 549 F.3d at 1086. This balancing uses a "sliding scale" that must also account for the strength of the movant's case: that is, the more likely it is that the movant will succeed on the merits, the less the movant must show that the balance of harms weighs in its favor (and vice versa). *GEFT Outdoors*, 922 F.3d at 364.

Defendants contend, and the Court does not doubt, that, if the injunction is granted, Defendants will suffer significant harm from being required to remove their frozen pizzas from grocery store shelves. Defendants repeatedly explain in their briefing that the frozen pizza business has already generated and is likely to continue to generate significant amounts of revenue for Defendants' Rosati's businesses. (Dkt. 59 ¶ 26.) If the frozen pizzas business is enjoined, Defendants will lose the revenue that they could have otherwise derived from future frozen pizzas sales. Moreover,

Defendants contend that the frozen pizza business has increased sales at all the other Rosati's restaurants. (Dkt. 58 at 7, 23; Dkt. 59 ¶ 27.) Removing the frozen pizzas from the grocery stores would directly and indirectly harm the Rosati's restaurants that have benefited from the new sales. Defendants also note that they would expect damage to their reputation and business relationships if their frozen pizza business was blocked. (Dkt. 58 at 23.) According to Defendants, grocers or other suppliers would reject any future relationship with the Rosati's brand for fear of reliability. (*Id.*)

But Defendants' harm must be balanced against the harm RFSI and Plaintiffs have suffered, and will continue to suffer, from Defendants' infringing conduct. To begin, there is no effective way to measure Plaintiffs' remedy at law because "it is virtually impossible to ascertain the precise economic consequences of intangible harms, such as damage to reputation and loss of goodwill, caused by such violations." *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 902 (7th Cir. 2001) (quoting *Abbott Lab'ys v. Mead Johnson & Co.*, 971 F.2d 6, 16 (7th Cir. 1992)). Each day that the infringing frozen pizzas remain on the market, RFSI risks injury to its brand and reputation. It is disputed whether the frozen pizzas are made with the same quality of all other Rosati's pizzas—but there is no doubt that the frozen pizza is different than the pizza offered from the Rosati restaurants. RFSI does not have control over the development, recipe, or distribution of the frozen pizzas and in fact had no say in the creation of the new business endeavor. (Dkt. 65 at 11 n.10.) That lack of involvement

and control threatens irreparable harm to the brand that RFSI—not just Anthony and David Rosati—owns.

Other harms, broader and likely longer-term, are also present. Were RFSI to continue to remain silent and permit Anthony and David Rosati to continue helping themselves to RFSI's intellectual property without a valid license, RFSI could place in jeopardy its ability to enforce its trademark rights against future infringers. (6/22/2021 Oral Argument 15:12-16:11); *Chicago Mercantile Exch. Inc. v. ICE Clear US, Inc.*, No. 18 C 1376, 2020 WL 1905760, at *15 (N.D. Ill. Apr. 17, 2020) (Abandonment through naked licensing occurs when a trademark owner allows "others to use the mark without exercising 'reasonable control over the nature and quality of the goods, services, or business on which the [mark] is used by the licensee'" (quoting *Eva's Bridal Ltd. v. Halanick Enters., Inc.*, 639 F.3d 788, 789 (7th Cir. 2011))); *Chattanooga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 792 (7th Cir. 2002) (holding that trademark owner barred from enforcing trademark rights under doctrine of laches because owner waited nine years to bring a trademark infringement suit).

Defendants nonetheless contend that Plaintiffs are "unlikely" to suffer any hardship absent an injunction. Specifically, Defendants suggest that Plaintiffs' harm is "theoretical" and would only constitute lost profits from a single restaurant that allegedly lost sales due to the frozen pizza business. (Dkt. 58 at 23.) Defendants also argue that the frozen pizza business does not inject any more confusion than is

inherent in the present system from multiple family licensees using different logos, taglines, websites, and trade dress. (*Id.*)

These arguments are unpersuasive, however, because they do not account for the potential harm to RFSI's marks and business reputation. And in balancing the harms, Plaintiffs correctly emphasize that any harm to Defendants from an injunction should be discounted as "self-imposed." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm.*, 290 F.3d 578, 596 (3d Cir. 2002) ("[T]he injury a defendant might suffer if an injunction were imposed may be discounted by the fact that the defendant brought that injury upon itself") Defendants, of course, have the choice to sell the pizzas under a different name, *see Ty, Inc.*, 237 F.3d at 902, but Defendants naturally want to benefit from the years-long effort by RFSI to build a thin crust pizza enterprise. Defendants must have anticipated potential issues with the frozen pizza business (after all, Anthony and David Rosati sought an opinion letter from counsel concerning the new business (Dkt. 59 at ¶ 3)). But they did not present the idea to the RFSI board (there is no call to speculate why) and instead went forward with their frozen pizza business. That they may now face a crisis largely of their own making does not compel the denial of preliminary injunctive relief. Plaintiffs' equities outweigh those of Defendants[5] and support a preliminary injunction.

---

[5] It may be that Power Play's equitable position is stronger than that of Anthony and David Rosati. But that fact does not compel the Court to leave in place an operation that should otherwise be enjoined merely to protect the business interests of a contracted supplier.

### D.    Public Interest

Finally, under the sliding-scale approach, the Court should, where appropriate, also consider "any effects that granting or denying the preliminary injunction would have on nonparties (something courts have termed the 'public interest')." *Girl Scouts*, 549 F.3d at 1085. There is a public interest in protecting the rights of registered trademark holders and preventing consumer confusion. *Eli Lily & Co. v. Nat. Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000). RFSI is entitled to protect its legally registered trademark, and consumers are entitled to protection from confusion in the marketplace. These facts show that the public interest weighs in favor of an injunction.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiffs' motion for preliminary injunction is granted. By separate order, the Court will address the need for additional proceedings intended to ensure the orderly and effective entry of a stand-alone preliminary injunction order.

SO ORDERED in No. 20-cv-07762.

Date: August 18, 2021

_____
JOHN F. KNESS
United States District Judge